WEBB v. DYE *et als.*

Decided October 22, 1881.

1. The question of the due execution of a will is to be determined like any other, in view of all the legitimate evidence in the case; and no controlling effect is to be given to the testimony of the subscribing witnesses. Their direct participation in the transaction must of course under ordinary circumstances give great weight to their testimony; but it is liable to be rebutted by other evidence either direct or circumstantial.

2. Upon an issue *devisavit vel non* a certificate of attestation signed by the subscribing witnesses, showing that all the requirements of the statute for the valid execution of the will have been complied with, is proper to go to the jury with the other evidence on the question of the due execution of the will.

3. Upon such an issue it is proper to instruct the jury, that the acts and conduct of the testator on the alleged occasion of the execution of the will together with the attestation clause and the genuineness of the signatures of the subscribing witnesses thereto are to be considered in determining the question, whether the paper in controversy was in fact the will of the testator.

4. A will must be subscribed but need not be proven by two attesting witnesses.

5. The testimony of a subscribing witness against the validity of a will must be viewed with suspicion.

6. Where upon an issue *devisavit vel non* a motion is made to set aside the verdict and grant a new trial, and all the evidence is set out in the bill of exceptions, the Appellate Court will reject all the parol evidence of the exceptor, which is in conflict with that of the other party; and if upon the evidence of the appellee and written evidence of the appellant the case is in favor of the appellee, the court will not disturb the verdict.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Ritchie, rendered on the 14th day of May, 1880, in a chancery cause in said court then pending, wherein John Webb was plaintiff and Annie Dye and others were defendants, allowed upon the petition of John Webb and others.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

The facts of the case are sufficiently stated in the opinion of the Court.

*Walter S. Sands* and *H. C. Showalter* for appellants relied upon the following authorities: *Pollock* v. *Glassel,* 2 Gratt. 439; Tate & Sands, Am. Form Book, 319; *Remscn* v. *Brinkerhoof,* 8 Paige 487; 26 Wendall 325; Jarman on Wills, (5th Am. ed.) 218, 220; *Lewis* v. *Lewis,* 11 N. Y. 220, 224; 3 Lomax Digest, 93; 1 Redfield on Law of Wills 218, 220; *Burwell* v. *Corbin,* 1 Rand. 131, 148, 158; *Dudleys* v. *Dudleys,* 3 Leigh 443, 446; *Clark* v. *Dunnavant,* 10 Leigh 34, 13; *Waller* v. *Waller,* 1 Gratt. 477; *Rosser* v. *Franklin,* 6 Gratt. 1; Code of Virginia 1860, page 573 § 4; Code of Virginia 1849, chap. 122 p. 516 § 4; *Beane* v. *Yerby,* 12 Gratt. 239; *Jesse* v. *Parker,* 6 Gratt. 57; *Johnson* v. *Dunn,* 6 Gratt. 625; *Nock* v. *Nock, ex'r,* 10 Gratt. 106; *Parramore* v. *Taylor,* 11 Gratt. 220; *Greene* v. *Cain,* 12 Gratt. 252; 6 Bing. 310 (19 E. C. L. 91); 7 Bing. 459 (20 E. C. L. 197); *In re* Goods of Ann Rawlins, 2 Curteis 326; *Fischer* v. *Popham,* 13 Eng. Rep. (Moake) 469; *Newton* v. *Pope,* 1 Cowan 109; *Carrington* v. *Bennett,* 1 Leigh 340; *Campbell* v. *Lynn & Co.,* 7 W. Va. 665.

*John A. Hutchinson* for appellees cited the following authorities: 1 Jarmin on Wills, (5th Am. ed.) 220 note y.; 3 Barb. Chy., 158; 1 Wms. Ex'rs 87; 3 Curtis 547; 2 Phill. 449; 1 Redf. on Wills 237, pl. 11 and cases cited in note 24; 5 Harr. 57; 30 Gratt. 56; 29 Gratt. 61; 27 Gratt. 96; 36 N. Y. 486; 12 Moore P. C. C. 158; 27 N. Y. 9; 24 N. Y. 51; 3 Sw. & Tr. 200; *Id.* 580; 25 N. Y. 422; *Id.* 252; 12 Gratt. 239; 6 Gratt. 1; 52 N. Y. 517; 14 Gratt. 621; 15 W. Va. 300; 14 W. Va. 304.

JOHNSON, PRESIDENT, announced the opinion of the Court:

A paper-writing purporting to be the last will and testament of Benjamin Webb, dated the 29th day of August, 1861, purporting to be signed and sealed by the said testator, and witnessed by William Harris and Phillip James Frederick, Jr., whose names are signed below the following attestation : " Signed, sealed, published and declared by the said Benjamin Webb as and for his last will and testament in the presence of us, who at his request and in his presence and in the presence of each other have subscribed our names as witnesses thereto," was presented to the county court of Ritchie county on the 10th day of June, 1879, for probate, and the order of the county court shows, that it "was duly proven by Philip James Frederick, Jr., one of the subscribing witnesses thereto ; whereupon the said Philip James Frederick, Jr., appeared in open court and being duly sworn testified, that he was present, and the testator, Benjamin Webb, acknowledged the said writing to be his will, although he did not see him sign his name thereto, and he in his presence at his request, and in the presence of William Harris, the other subscribing witness, who is now deceased, signed his name as a witness thereto," and the signature of said other subscribing witness, William Harris, being proved, the will was admitted to probate. On the 29th day of August, 1879, the plaintiff, John Webb, filed his bill in the circuit court of Ritchie county against the proper parties, charging that said paper-writing was not the will of Benjamin Webb, deceased, because, at the time said will was attested, it was not signed by the said Benjamin Webb, and that the testator never acknowledged the said paper as his will in the presence of the witness, Frederick, &c. The bill further charges, that the testator, at the time the said will purports to have been executed, was of unsound mind, and that undue influence was exerted over him to induce him to make said will, if he did execute the same. The bill prays for an issue *devisavit vel non.* The defendants answer, denying the allegations of the bill.

On the 30th day of October, 1879, the issue was ordered in the usual form, and was tried at the April term, 1880 ; and on the 29th day of April, 1880, the jury rendered a verdict in fa-

vor of the will, which verdict the court approved and dismissed the plaintiff's bill. At the trial of the issue the contestants, John Webb and others, saved three bills of exceptions. The first to the admission as evidence to the jury of the attestation to the will and the signatures thereto of the subscribing witnesses; the second, to the giving of two of the instructions asked for by the proponents of the will; the third, to the refusal of the court to set aside the verdict of the jury and grant a new trial. Did the court err to the prejudice of the appellants in the matters complained of?

The witness, Frederick, says, in his evidence on the issue, that he did not see the name of Benjamin Webb to the will, when he witnessed it. When recalled he said: "When I signed my name to the paper  *  *, I looked at it to see what names were on it. I saw the seal or scroll on the right hand side but did not see Benjamin Webb's name there." On cross examination he said: "I saw the scroll to the paper; that is my recollection about it now. I have since talked to Showalter and Braiden about it. I do not recollect, that I saw the name of Benjamin Webb to the paper. I will not say that it was not there, when I signed my name, but I do not recollect of seeing it." Frederick was the miller at the testator's mill, and aside from his testimony, it is not shown, what degree of intelligence he possessed. He says he did not read the will or the attestation clause to the will, nor was there any part thereof read to him; that Benjamin Webb came down to the mill, where he was at work, and asked witness to go to his office, saying: " I want you to go to my office and witness a paper for me." "I at once went to the office, and there found Wm. Harris sitting by the window with a paper before him on the desk; he turned to Benjamin Webb and said, 'Squire Webb is this your witness,' to which Benjamen Webb replied 'Yes he is.' William Harris then doubled over the paper and said: 'Write your name there,' and I did then write my name in the place, as directed by him, in the presence of the said Webb and Harris. Mr. Webb saw me write my name on the paper. There were no other witnesses then present at that time. I then said, 'If you old gentlemen get me into trouble about this, you may look out.' William Harris replied 'you need not be afraid Mr. Frederick I will be with you.'

At the time I signed the paper I think William Harris's signature was on it just above mine. I did not see Harris sign his name to the paper, neither did I see the name of Benjamin Webb thereto. I did not at that time while in the office know, what the paper I signed was. I did not read the body of it nor the attestation clause, nor was the same or any part thereof read to me; neither did Benjamin Webb, or William Harris at that time inform me, while in the office together, what the paper I signed was. Benjamin Webb was not seated, while I was in the office; and Benjamin Webb did not say anything, while I was in the office, except what I have already said. He said, ' Yes he is,' in answer to William Harris's question ' Is this your witness?' "

The will as well as the order of the county court admitting it to probate was before the jury. The signature of William Harris was proved to be his genuine signature; and it was also proved, that the will and attestation clause were in the handwriting of said William Harris, and that said William Harris wrote a great many legal papers and wills; that he was a magistrate and familiar with legal papers. From the weight of the testimony there can be no doubt, that the signature of Benjamin Webb to the will is genuine.

One witness, Benjamin F. Stewart, testifies, that about the last of August or first of September, 1861, Benjamin Webb took him into a room and fastened the door and showed him the will in question and asked his opinion about one of the bequests; and he observed to him, that it was not signed, and he said : " He did not know, that he ever would sign it, until he was sure Minerva Webb got an equal share of the personal estate with his other children." On cross-examination he said, he had married Mr. Webb's sister, said : " I think this is the paper Benjamin Webb showed me. Harris's and Frederick's names were on the paper, Benjamin Webb showed me." He had not seen the paper from that time until the trial.

In the presence of the jury the contestants waived the charge of incapacity and undue influence. So the only question before the jury was as to the execution of the will.

The result of the authorities is, that the question of the due execution of a will is to be determined like any other in

view of all the legimate evidence in the case; and no controlling effect is to be given to the testimony of the subscribing witnesses. Their direct participation in the transaction must of course under ordinary circumstances give great weight to their testimony; but it is liable to be rebutted by other evidence either direct or circumstantial. *Orser* v. *Orser*, 24 N. Y. 52. In that case there were two witnesses to the will, one of whom was dead, and the other testified upon the trial, that the will was not signed, or the signature thereto acknowledged in his presence; and that it was not declared by the testator to be his will. The certificate of attestation was full, and showed, if true, a perfect compliance with the requirements of the statute. The signatures of the testator and the deceased witness, Yoe, were proved to be genuine, and the body of the will was in the handwriting of the deceased witness, Yoe, who was also shown to have been a justice of the peace, and accustomed to draft and attest testamentary papers. The Supreme Court decision holding the will not executed was reversed.

In *Brinkerhoff* v. *Remsen*, 8 Paige 489, it was held, that where an instrument propounded as a will was wholly in the handwriting of a third person and was executed by the decedent merely by signing it, and acknowledging it to be her hand and seal in the presence of the subscribing witnesses, and the instrument was not read, nor was anything said at the time, from which the witness understood it to be a will, it was not duly executed and published by the executrix so as to make it a will valid under the provisions of the statute, although the attestation, which was not read by or in the hearing of the witnesses, stated the will to have been duly published in the presence of such witnesses. It was in this case further held, that where the subscribing witnesses to a will have subscribed their names as witnesses at the end of the attestation clause, showing that all the formalities requisite to the execution of a valid will were complied with, the mere inability of the witnesses to recollect, that the testator published the instrument as his will, is not sufficient to invalidate the same; but if the witnesses recollect and declare on oath, that the testator did not declare the instrument to be his will, and that the attestation clause was not read and under-

stood at the time of the execution, the will was not duly executed under the statute. In that case both the subscribing witnesses expressly disproved the statements in the attestation, to which they had subscribed their names. To the same effect is *Lewis* v. *Lewis*, 11 N. Y. 221.

In *Nelson* v. *McGiffert*, 3 Barb. Chy. 158, it was held, that where one of the subscribing witnesses to a will swears, that all the formalities required by the statute were complied with in the execution thereof, the will may be admitted to probate, notwithstanding the other subscribing witness may not be able to recollect the fact; and also, where the attestation clause of a will states, that the will was signed, sealed and published by the testator as his last will and testament in the presence of the attesting witnesses, who at his request and in his presence subscribed their names as witnesses thereto, this after a considerable lapse of time, and when it may be reasonably supposed, that the particular circumstances attending the execution of the will have escaped the recollection of the attesting witnesses, is a circumstance, from which the court or jury may infer, that the requisites of the statute were complied with.

In *Peck* v. *Carey*, 27 N. Y. 9, it was held, that the signature of the testator or his acknowledgment thereof in the presence of the attesting witnesses and his publication of the instrument as his will were proved by the attestation clause and the surrounding circumstances, though after the expiration of two years none of the witnesses could testify, that they saw the testator sign the will or heard him acknowledge his signature, or heard the attestation clause read, which distinctly affirmed the signature and publication of the will.

In *White* v. *Trustees of the British Museum*, 6 Bing. 310, it appeared, that the paper-writing in question was wholly in the testator's handwriting except the names of the witnesses, that White signed it, before it was signed by the witnesses or either of them ; that about five months before his death he requested two of the witnesses to sign their names to the said writing, which they did in the presence of said White; but they did not see the signature of said White to the said paper-writing, and were not informed at that or any other time by said White, what was the nature of the said writing,

or the purpose, for which he requested them to sign it; that about three months before his death said White requested the other witness to sign said paper-writing, which he immediately did in White's presence, and was then informed by said White, that said paper-writing was his will; that said paper-writing consisted of two sheets, which were both in the same room, at the time the respective signatures of the three witnesses were placed thereto; and that said White was of sound and disposing mind and memory, at the time he signed the paper, and at the times the witnesses subscribed their names thereto. It appeared from the inspection of the said paper-writing, that the signatures of the three persons thereto could not have been placed there with any other purpose than to make them witnesses to the will; and that immediately above their signatures there was written in the handwriting of the testator these words : "In the presence of us as witnesses thereto." Tindal C. J. quoted the Statute 29, Car. II, ch. 3, § 5, as follows : "That all devises and bequests of any lands or tenaments shall be in writing, and signed by the party so devising the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses, or else they shall be utterly void and of none effect," and held, that the will was executed as the statute required, concluding his opinion in these words : "When therefore we find the testator knew this instrument to be his will, that he produced it to three persons and asked them to sign the same, that he intended them to sign it as witnesses, that they subscribed their names in his presence and returned the same identical instrument to him, we think the testator did acknowledge in fact though not in words to the three witnesses, that the will was his. For whatever might have been the doubt upon the true construction of the statute, if the case were *res integra,* yet as the law is now fully settled, that the testator need not sign his name in the presence of the witnesses, but that a bare acknowledgement of his handwriting is a sufficient signature to make their attestation and subscription good within the statute, though such an acknowledgement conveys no intimation whatever, or means of knowledge, either of the nature of the instrument or the ob-

ject of the signing, we think the facts of the present case, place the testator and the witnesses in the same situation, as they stood, where such oral acknowledgement of signature has been made; and we do therefore upon the principle of these decisions hold the execution of the will in question to be good within the statute."

In *The Goods of Ann Rawlins*, 2 Curteis 326, there was a motion to probate the will of said Ann Rawlins. It appeared, that the deceased signed her name to the will not in the presence of witness, and shortly afterwards produced the will before two witnesses, and said: "Sign your names to this paper," which they did; it was held not to be an acknowledgement of her signature under the 9th sec. of 1 Vict. ch. 26. Sir Herbert Jenner said: "Can the signature to this will be said to have been made or acknowledged by the testatrix in the presence of the witnesses, as required by the 9th sec. of the statute? From the affidavit it appears, that all the deceased did was to request the witnesses to sign their names to the paper-writing, saying it was a will, or that the signature was hers; I cannot hold this to be a sufficient compliance with the statute, and I must reject the motion."

In *Chambers & Yatman* v. *the Queen's Proctor* 2 Curteis 415, of the three witnesses to the will two deposed, that the testator did not sign the will in their presence, the other that he did, the court believing from the evidence that the testator did sign the will in the presence of the witnesses, declared it to have been duly executed. The attestation in that case, over the signatures of the three witnesses, was as follows. "Signed, sealed, declared, and delivered by the said testator, Thomas Thompson, as his last will and testament in the presence of us."

In *Blake* v. *Knight*, 3 Curteis 547, neither of the three subscribing witnesses to the will of Edmund Blake, remembered, that his signature was to the will, when they signed it. William Brewer said: "I did not see the name 'Edmund Blake' at that time, as I see it now opposite the seal and at the end of the will; there was no seal there then; of that I am certain; I do not think that the name was there then, but I do not swear to that." The next witness to the will, Charles Sellick, said: "I will swear to the best of my belief,

that the name 'Edmund Blake,' appearing at the foot or end of the will between the clause of attestation and the seal was not written, that is, had not been written, and was not upon it, when I wrote my name as a witness. I was a youngster; I was unused to the form of such things; I did not think anything of it; I am quite certain, that the seal was not there at the time now deposed of. I will not swear positively, that the name was not there, but only that I do not remember it." The third witness could not remember, whether either signature or seal was there, when he signed as a witness. There was other evidence and circumstances in the case. Sir Herbert Jenner said, "I can not entertain a doubt, that this paper was signed before the witnesses subscribed. I have no more doubt of the fact, than if they had positively sworn to that effect. When I look to the care and caution, with which the paper is prepared, the knowledge of the deceased in testamentary matters, derived from his occupation, in a solicitor's office, he must have known how to give validity to a testamentary paper in the year 1838. No doubt the memory of the witnesses fails them with regard to circumstances happening nearly four years ago. The court cannot safely trust to the memory of witnesses under such circumstances; it must attend to the facts of the case, and say whether it is satisfied, that the name of the deceased was written to the will, when the witnesses signed it; whether it was signed in their presence, or signed beforehand and acknowledged in their presence. The deceased saying that the will was all in his handwriting, if the court is satisfied, that the signature was then written, would be sufficient as an acknowledgement of his signature. * * * The result to which I come is, that the court is not bound to have the positive affirmative evidence of the subscribing witnesses. I am quite satisfied, that the name of the testator was signed to the paper, before the witnesses subscribed; and I think his acknowledging this to be his will, it being all in his own handwriting, and his name, as I hold, being then signed to it, amounts to a sufficient acknowledgement of his signature. I pronounce for the validity of this paper as a will; and I direct the probate to be delivered out to the executor."

In *Dudleys* v. *Dudleys,* 3 Leigh 436, it appeared, that upon

a question of probate the testimony of one of the attesting witnesses was directly contradicted by another; the county and circuit court, both gave credit to the witness *for* the will. On appeal from the sentence of probate it was held, that the court of appeals on a mere question of credibility of witnesses will always presume, that the inferior courts, which saw and heard the witnesses examined, decided correctly.

In *Clarke and others* v. *Dunnavant*, 10 Leigh 13, a will more than eight years old attested by three witnesses being offered for probate, one of the witnesses proved, that being casually present at the testator's house on a particular occasion which he minutely described, the will was produced, read to the testator (who it appeared could neither read nor write), signed for him by the witness and acknowledged by him as his will in the witness's presence, who thereupon subscribed as attesting witness in the presence of the testator. The other witnesses prove merely their signatures, and that they would not have subscribed, unless they had been requested by the testator and had thought, that all things were regular, having forgotten all the circumstances of their attestation except that they were present at the testator's house on the occasion described by the first witness; and one of them stated, that if requested by the testator to attest his will, he would have done so, whether the testator were present or not, when he subscribed his name, while the other admitted, that he did not know in what manner the law required a will to be witnessed. The court held, that though the attesting witnesses to a will have forgotten whether material requisitions of the statute were observed in the execution and attestation or not, compliance with these requisitions may nevertheless be properly inferred by the court of probate from the circumstances of the case.

In *Jesse et als.* v. *Parker's adm'rs, et als.*, 6 Gratt. 57, it appeared, that Dr. Z. Tally wrote the will of Jeremy Parker; the name of the testator was written to the will by Dr. Tally, and the name of himself, Jane Sanderson and Sally C. Southall were signed by him as attesting witnesses to the will. Sally C. Brown, formerly Sally C. Southall testified, that she did not sign her name to the will. The reason she did not was, that she thought it would answer as well for Dr. Tally to

write it. After stating when and how the paper was written by Dr. Tally she said, that as soon as the paper was written, Dr. Tally got up and said to them. "You all come in here," and she went into the testator's room, and Dr. Tally standing on the floor near the bed, on which the testator was lying, read the will, and that nothing passed, that she heard between Dr. Tally and the testator before reading the paper, and after Dr. Tally had read the paper, he asked Mr. Parker, if that was his will, or if he acknowledged that to be his will. (She was not certain of the words but one or the other was said) and she understood Mr. Parker to say "Yes." That she could not be certain that Dr. Tally read the paper loud enough to be heard by Mr. Parker. Dr. Tally testified to the particulars of the execution of the will. Jane Sanderson testified, that her name was not put to the will by her authority, and she did not consider herself a witness to the will. She considered the testator almost dead, at the time the will was read to him by Dr. Tally, but she was not able to say, whether he was or was not able to understand the paper, or know what he was doing. The jury upon the issue *devisavit vel non* found in favor of the will. There was a motion to set aside the verdict and grant a new trial, which was overruled in the court below. Allen, J., speaking for the whole court said : "The court is of the opinion, that as the jury were the proper judges of the weight and credit due to the testimony of the witnesses, the verdict in favor of the will sanctioned by the opinion of the court, before which a trial of the issue was had, has concluded all mere questions of fact depending upon the credit to be given to the witnesses. The court is therefore of opinion, that upon this record it must be taken, that all the requirements of the statute in order to establish a will were satisfactorily proved." The court further say : "That although there must be satisfactory proof, that every statutory provision has been complied with in order to establish a will, the law does not prescribe the mode of proof, nor that the will shall be proved, as well as attested, by a specific number of witnesses. If such proof were to be required from each subscribing witness, the validity of wills would be made to depend upon the memory and good faith of a witness, and not upon reasonable proof, that all the requirements of the statute had in fact been complied with."

In *Young by, &c.* v. *Barner et als.*, 27 Gratt. 103, Staples, Judge, who delivered the opinion of the court, says : " It is held upon good authority, that a person who signs his name as a witness to a will, by his act of attestation solemnly testifies to the sanity of the testator. If he afterwards attempts to impeach the validity of the will, his evidence is not to be positively rejected, but it is to be received with the most scrupulous jealousy." The same principle was affirmed in *Lamberts* v. *Cooper's Ex'r et als.*, 29 Gratt. 61, and *Cheatham* v. *Hatcher et als.*, 30 Gratt. 56. In the two latter cases it is clearly held, that the testimony of a subscribing witness in-validating a will ought to be viewed with suspicion.

Was it error for the court to admit in evidence to be considered by the jury the attestation clause to the will of Benjamin Webb? It has been repeatedly held in Virginia, that it is not neces-sary for a certificate of attestation to be annexed to the will ; that no form of attestation is necessary. But if there is an attestation over the signatures of the subscribing witnesses, it is proper, that it shall go to the jury with the other evidence to be considered by them upon the question of the due execu-tion of the will. If, as we have seen, where the names of the subscribing witnesses have been placed to a will without any form of attestation whatever, and the witnesses have forgot-ten, what occurred at the time the will was executed, the law will presume, that every requirement of the statute was com-plied with, it seems to me, that presumption would be strengthened, if the certificate of attestation, to which the attesting witnesses subscribed their names, shows, that every requirement of the statute was in fact complied with, especially after the lapse of eighteen years, as in this case.

It is asserted, that the court erred in giving the third and fourth instructions at the instance of the plaintiff in the issue. The third instruction is, "that the acts and conduct of said Webb on the alleged occasion of the execution of said paper, taken in connection with the attestation clause of said paper and the genuineness of the signatures of the subscribing wit-nesses thereto, are to be considered by the jury in determining whether the paper in question is the will of said Benjamin Webb." The instruction is proper. There was no contro-versy about the genuineness of the signatures of the subscrib-

ing witnesses; and the instruction amounts to no more than saying, that the jury is to consider as proper evidence before them the acts and conduct of the testator, together with the fact of the attestation of said paper and the genuineness of the signatures. It was certainly proper that the jury should consider all this. The fourth instruction is, "that although the surviving subscribing witness, Frederick, may not testify, that all the formalities prescribed by law were observed at the time of the alleged execution of the paper in question as the will of Benjamin Webb, and as contained in the attestation clause of said paper, yet the jury taking into consideration the said attestation clause, as well as the facts and circumstances attending the transaction, may determine, that the said paper is the will of Benjamin Webb notwithstanding the testimony of the said witness Frederick." In *Orser* v. *Orser, supra,* the instruction was asked: "That although the surviving witness, Acker, had sworn, that the testator did not acknowledge the signature to the will or comply with the other requisitions of the statute, the jury had nevertheless a right to find, that he did make such acknowledgment from the evidence supplied from the certificate of attestation." The Court of Appeals held, that had the words "and from the other circumstances proved in the case" been added, the judge would have been bound to have given the charge. The instruction is proper. As we have seen, the evidence of a surviving subscribing witness against the validity of a will must be viewed with suspicion, and it being a question, whether the will was in fact executed according to the requirements of the statute, if the jury were convinced from all the facts and circumstances surrounding the testator, that the will was in fact executed as the law required, they may so find notwithstanding the fact, that the surviving subscribing witness may swear that all the requirements of the statute were not met. A will must be subscribed, but need not be proven by two attesting witnesses. *Cheatham* v. *Hatcher et als.,* 30 Gratt. 56.

As Judge Staples in the above case justly remarks, it is a wise rule, which authorizes the material facts to be proved by one of the subscribing witnesses or even by other competent testimony; and if it were otherwise, the proof of a duly attested will might be defeated by the forgetfulness or perjury of some of them.

To prevent the jury from being misled in possibly supposing, that the court intended to say to them, that the evidence was sufficient to establish the will notwithstanding the testimony of Frederick, it would have been better to have modified the instructions by the words, "if you believe from the evidence, that it was signed or acknowledged in the presence of the attesting witnesses thereto." But the jury could not have been so misled for the court had at the instance of the contestants given four very strong instructions bearing on the requirements of the statute in the execution of a will. The first recited the requirements of the statute and instructed the jury, that the burden of proof is on the plaintiff in this issue to establish to the satisfaction of the jury by a preponderance of evidence, that the above statutory requirements were complied with in reference to the paper-writing purporting to be the last will and testament of Benjamin Webb, deceased, in controversy in this cause, and unless the jury are so satisfied, they must find the issue for the defendants. The second instructed the jury, that unless they believed, that the signature of Benjamin Webb to the will was genuine, they must find for defendants. There was no claim, that the signature was written at the request of testator by another. The third instructed the jury, that the witnesses to a will attest a perfect instrument, an instrument signed by the testator, not a paper without a signature; and unless the jury believe from the evidence, that at the time of the attestation of the paper-writing in controversy by William Harris and James Phillip Frederick, the subscribing witnesses thereto, the genuine signature of said Benjamin Webb, had been affixed by him thereto, then the said paper-writing is not the will of said decedent, and the jury must find the issue for the defendants. The fourth instructed the jury, that no statements made by the said Benjamin Webb to any person, other than the said William Harris and James Phillip Frederick when present at the same time, acknowledging the said paper-writing to be his will, are to be considered by the jury in determining the question of the due and legal execution thereof."

This instruction was asked and given in view of the evidence, that on the 6th day of June, 1878, the testator showed the said paper to witness Mitchell and told him, that it was

his will, and wanted the witness to make a mark on it, which he did by putting the above date thereon, and also of the evidence of the witness Davis, who stated, that in 1879 the testator showed him the same paper and told him, that it was his will. This evidence was evidently admitted on the controversy as to the genuineness of the signature.

The fifth instruction was, "that unless they believe from the evidence, that the said Benjamin Webb acknowledged the said paper-writing to be his will, or acknowledged the same to be his act, in the presence of both the subscribing witnesses thereto, when present at the same time, they must find the issue for the defendants therein; and the said acknowledgment must have been made when the said paper-writing was a perfect instrument by having the genuine signature of said Benjamin Webb affixed thereto."

I do not say whether these instructions propound the law correctly or not. I quote them to show that the jury could not have misunderstood or been misled by the fourth instruction given at the instance of the plaintiffs in the issue.

Should the verdict of the jury have been set aside and a new trial granted? Where upon an issue *devisavit vel non* a motion is made to set aside the verdict and grant a new trial, and all the evidence is set out in the bill of exceptions, the Appellate Court will reject all the parol evidence of the exceptor, which is in conflict with that of the other party; and if upon the evidence of the appellee and written evidence of the appellant the case is in favor of the appellee, the court will not disturb the verdict. *Lamberts* v. *Cooper's ex'rs et als.*, 29 *Gratt. 61*; *Nease et al.* v. *Capehart's ex'r*, 15 W. Va. 299, and cases cited. This rule would upon a review of the action of the court in refusing a new trial exclude entirely the consideration of the testimony of B. F. Stewart, whose testimony certainly could not have been believed by the jury. He swore most positively, that a short time after the 29th of August, 1861, when the will purports to have been executed, Benjamin Webb, the testator, showed him the same paper-writing here in controversy, and that he called his attention to the fact, that he had not signed it, and the testator replied, that "he did not know, that he ever should sign it, until he was sure Manerva Webb got an equal share of the personal estate

with his other children." Stewart says the names of the subscribing witnesses, Harris and Frederick, were there, but that Benjamin Webb's name was not there. The jury could not have believed him and have rendered the verdict they did. They had a right to disbelieve him. We have not the right to say, that the verdict of the jury should be set aside, because the testimony of this witness was disregarded. If there was sufficient evidence before the jury after excluding all the parol testimony of the exceptor, the verdict must stand. The will itself was before the jury with the signature of Benjamin Webb affixed thereto. The signatures of both attesting witnesses were proved, and the attestation-certificate, which is full and contains all and more than all the statute requires for the execution of a will. The fact is proved, that the body of the will, and the certificate of attestation are in the handwriting of the deceased subscribing witness, William Harris. It is also proved, that said William Harris was a "magistrate" and wrote many wills, and was familiar with testamentary papers; that Frederick, the other attesting witness was a miller, and nothing is shown as to his intelligence, or that he had any knowledge of testamentary papers. The will was executed nearly eighteen years before the testator's death, and even Frederick finally says : "I do not recollect, that I saw the name of Benjamin Webb to the paper. I will not say it was not there, when I signed my name, but I do not recollect of seeing it." It seems to me, the evidence is ample to sustain the verdict of the jury after excluding the conflicting evidence of appellee.

The decree of the circuit court is affirmed with costs and $30.00 damages.

JUDGES HAYMOND AND GREEN CONCURRED.

DECREE AFFIRMED.