# CHARLESTON.

## COFFMAN *v.* HEDRICK.

(SNYDER, PRESIDENT, absent.)

Submitted January 14, 1889.   Decided February 11, 1889.

1. WILLS—DEVISAVIT VEL NON—CHANCERY-PRACTICE—UNDUE INFLUENCE—WITNESS—EQUITY—APPEAL.

The direction and trial of the issue of *devisavit vel non* is a proceeding under our statute to impeach or establish a will after a sentence or order made by the County Court or by its clerk and confirmed by the County Court; but it is not an appellate proceeding, and the Circuit Court in such a proceeding does not pass upon the regularity or irregularity of the proceedings to probate said will before the clerk or County Court.   (p. 122.)

2. WILLS.

Upon a bill in chancery to contest the validity of a will, which has been admitted to probate, the functions of the suit are exhausted, when that question is decided.   (p. 123.)

3. WILLS—WITNESS.

One of the attesting witnesses to a will, who is a brother to the party, who is claimed to have made the will in controversy, and who is introduced by the contestees to prove the execution of the paper in the absence of the other subscribing witness, who cannot be found after diligent inquiry, although said witness so introduced is a party to the suit brought to impeach the validity of said will, and would inherit a portion of the property devised

| 32 | 119 |
| 39 | 101 |
| 39 | 373 |
| 32 | 119 |
| 53 | 232 |
| 32 | 119 |
| 56 | 313 |

in the absence of said will, yet, if he is unprovided for in said will, he is not incompetent under the Code of West Virginia c. 130, s. 23 to testify in support of said will as to its proper execution. (p. 123.)

4. WILLS— UNDUE INFLUENCE.

Where a party is shown to have mental capacity sufficient to make a will, in the absence of fraud or undue influence the validity of the will can not be impeached, however unreasonable or unaccountable it may seem to others. (p. 132.)

5. WILLS—DEVISAVIT VEL NON—UNDUE INFLUENCE.

Upon the trial of an issue of *devisavit vel non* undue influence, in order to overthrow the will, must not only be alleged, but it must be proven by the contestants; it will not be inferred. (p. 132.)

6. INSTRUCTIONS.

Instructions, which are not based upon or applicable to the facts proven in the case, should not be given to the jury, although they may be correct as abstract principles of law. (p. 132.)

*J. W. Harris* and *J. W. Davis* for appellants.

*R. F. Dennis* and *J. A. Preston* for appellees.

ENGLISH, JUDGE :

This was a bill filed by Mason D. Coffman and David Coffman, Sr., and Rebecca, his wife, in the Circuit Court of Greenbrier county against David Hedrick and others, heirs at law of John Hedrick, deceased, contesting the validity of a paper purporting to be the last will and testament of John Hedrick, deceased, which appears to have been probated by the clerk of the County Court of said county on the 14th day of July, 1885, and on the 15th day of August, 1885, the County Court of said county made an order confirming the action of said clerk in admitting said paper-writing to probate as the last will and testament of said John Hedrick.

The Code of 1887 c. 77, s. 26, provides as follows: "The clerk of any County Court, during the recess of the regular session of said court, may admit wills to record upon the same proof, and with like effect, as the said County Court could do in session, but no contest as to such probate or record shall be heard or determined by the clerk. * * * * The probate of every will so made by such clerk shall be reported by him to the next regular session of the County Court, when, if no objection be made thereto, and none

appear to the court, the court shall confirm the same; but, if objection be made by any person interested, the court shall hear and determine the same," *etc.*

Section 29 of the same chapter provides, that any person feeling himself aggrieved by an order or sentence of the County Court confirming or refusing to confirm the action of the clerk of the County Court as to the probate of any will or admitting or refusing to admit any will to probate may within one year or, if such person be under disability, within one year, after such disability is removed, file his petition to the Circuit Court and appeal to said court from such order or sentence in the manner in said section prescribed; and said section also provides, that "the clerk of the Circuit Court shall upon the filing of such petition issue the proper process thereon, and the case shall be proceeded in, tried and determined in said court regardless of the proceedings before the County Court or clerk thereof and in the same manner in all respects, as if the application for such probate had been originally made to the Circuit Court."

Section 31 of said chapter provides: "Every such order or sentence of the County Court not appealed from and every such order or sentence of the Circuit Court on such appeal shall be a bar to a bill in equity to impeach or establish such will unless on such grounds, as would give to a court of equity jurisdiction over other judgments at law." This proceeding, however, was under the thirty second section of said chapter, which provides that, "after a sentence or order made as aforesaid, a person interested, who was not a party to the proceeding, may within five years proceed by bill in equity to impeach or establish the will, on which bill, if required by either party, a trial by jury shall be ordered," etc., to determine the issue of *devisavit vel non.*

The appellants devote a considerable portion of their brief to the discussion of the question, whether the clerk of the County Court has power to admit a will to probate in an *ex parte* proceeding, and referring to section 31 of said chapter, which provides, that every such order or sentence of a County Court not appealed from shall be a bar to further proceedings, appellants' counsel asks: "How could one appeal, unless he had been made a party before the County

Court?" This question is answered by reference to section 28 of said chapter, which shows, that the parties interested must be convened, when the original application is made directly to the County Court. Section 26 provides, that a petition must be filed before said court by any person desiring the probate of a will. When a will is presented before a clerk for proof no petition or process is required by the statute, and the action of the clerk will be confirmed by the County Court without process or convention of the parties, if no objection be made thereto, and none appear to the court. Section 29 provides for an appeal from such order or sentence by any person feeling himself aggrieved by any order or sentence of the County Court confirming or refusing to confirm the action of the clerk of the County Court as to the probate of any will, and directs how such appeal must be taken: that the clerk shall issue process, and that the case shall be proceeded in, tried and determined in said court regardless of the proceedings before the County Court or clerk thereof and in the same manner in all respects, as if the application for such probate had been originally made in the Circuit Court.

If, then, the appellants in this case were aggrieved by errors committed by the clerk of the County Court, or by the County Court itself, in proceedings taken by either in the probate of the will in controversy, they had a plain, complete and adequate remedy by appeal to the Circuit Court in the manner prescribed by statute ; and, while the statute seems clear, that when a will is presented to the clerk of the County Court during the recess of the regular sessions of said court for probate, the proceeding is *ex parte ;* and when a will is sought to be proved before the County Court it must be done upon petition, and the persons interested must be convened, and when an order or sentence is made upon such proceedings before the County Court it is final, unless appealed from as provided in the twenty ninth section aforesaid,—yet in the proceedings now presented to this court on appeal I am of opinion, that the question as to the regularity or irregularity of the proceedings before the said clerk or County Court is not material.

It will be perceived, that section 32, which provides for

directing the issuing of *devisavit vel non*, commences as follows: "After a sentence or order made as aforesaid, a person interested, who was not a party to the proceeding, may within five years proceed by bill in equity to impeach or establish the will," etc., and, if no bill be filed within that time, the sentence shall be forever binding. And whether the order or sentence of the clerk of the County Court and the order of the County Court confirming the same were right or wrong, regular or irregular, it appears, that an order was made by the clerk admitting said will to record, and the County Court confirmed his action. These proceedings might have been appealed from by any person feeling himself aggrieved within one year; but it was not done, and the case is now presented to this court upon an appeal not from the action of said clerk or County Court but from the rulings of the Circuit Court upon the trial of the issue out of chancery directed in this cause; and the words of the order directing the issue plainly indicate, that the trial is independent of any former action.

The first error assigned by the appellants and contended for by them is, that David Hedrick, the brother of John Hedrick, who subscribed the paper purporting to be the will of said John Hedrick as one of the witnesses thereto, and who qualified as his administrator with the will annexed, was not a competent witness to prove the execution of said will under Code 1887, c. 130, s. 23, because he is the administrator with the will annexed, and the bill prays that he may be required to settle his administration accounts before the commissioner of the court, (although he is not made party to the suit as administrator;) and, if he was, his administration accounts could not be settled in this suit; neither could the lands of said John Hedrick be sold, and the proceeds be divided among his heirs according to their respective rights, as prayed; nor could the creditors of said John Hedrick be convened, as prayed for; and, after the payment of their debts, the surplus proceeds of the personal property could not be distributed among the heirs at law of John Hedrick, deceased.

In the case of *Dower* v. *Church*, 21 W. Va. 23, this Court held: "Upon a bill in chancery to contest the validity of a will

which has been regularly admitted to probate the functions of the suit are exhausted when that question is decided; and if the will is declared invalid and null, it is not competent for the court to proceed in that cause further." No action then could be asked or enforced against said David Hedrick in this case. His evidence seems to have been in favor of the establishment of the will, while his interest would seem to lie in the other direction; for if the will is sustained, he receives nothing, and if it is set aside he becomes one of the distributees of his brother's estate.

It is however contended, that, because the will in controversy devises the property to the children and grandchildren of said David Hedrick, he in testifying in his own behalf, when his evidence tends to sustain the will. In the case of *Seabright* v. *Seabright*, 28 W. Va. 415, it was held, that the word " against," as testifying against executors, administrators, heirs at law *etc.*, does not mean on opposite sides of a suit, but as having opposite interests in the suit. Under the head of "Competency of Witnesses to Will" Code 1887, c. 77, s. 18 we find the following language: "If a will be attested by a person, to whom or to whose wife or husband any beneficial interest in any estate is thereby devised or bequeathed, if the will may not be otherwise proved, such person shall be deemed a competent witness." Surely, then, David Hedrick would be no more incompetent, when the property is devised to his children and grandchildren, than he would be, if such property were devised to himself; and by section 20 of the same chapter the fact of his being an executor would not disqualify him; and an administrator with the will annexed would occupy almost precisely the same attitude.

Again, could the execution of the will of said John Hedrick have been otherwise proven than by admitting the evidence of said David Hedrick? It would seem not. He was one of the subscribing witnesses, and the other subscribing witness was absent in some one of the Western States, and his whereabouts could not be ascertained after diligent inquiry, and it does not appear, that any other persons were present at the time said paper was executed besides John Hedrick and the two subscribing witnesses; and under these circumstances the evidence of said David Hedrick was ab-

solutely necessary to prove the execution of said paper writing, and his testimony was admissible under the statute.

Was said David Hedrick a competent witness to prove the execution of said writing under section 23 of chapter 130 of the Code of West Virginia? In the case of *Kerr* v. *Lunsford*, 31 W. Va. 659 pt. 4 of Syll. (8. S. E. Rep. 493), it was held; " One who would inherit part of the testator's property but for the will is under section 23 of chapter 130 of the Code of West Virginia, incompetent to speak of the testator's capacity to make the will." In that case it seems, however, that Thomas Lunsford, one of the children and heirs at law of the testator, was asked his opinion of the mental condition of the testator; and it was held, that the court below properly refused to permit the question to be answered, holding that under the statute he was incompetent to speak on the subject, referring to *Anderson* v. *Cranmer*, 11 W. Va. 562. In that case however the witnesses were sworn in their own behalf, and it was held, that such witnesses were incompetent to give any opinions as to the grantor's sanity based on any transactions or conversations had with him personally at that or any other time. In the case of *Kerr* v. *Lunsford* Thomas Lunsford, the witness who was questioned in regard to the mental capacity of his father, whose will was being contested, was left nothing by the will, but the entire estate was devised to the mother of witness and his sisters or their children; and he was called as a witness by those contesting the will to testify as to the mental capacity of his deceased father, and was objected to by the proponents of the will, and the objection was very properly sustained. In that case he would not have been called by the contestants, if his opinion had been favorable to the devisees under the will upon the question of the mental capacity of his father; and if he had been allowed to testify, he would have been testifying in his own behalf and against the devisees under the will.

In the case under consideration however the witness, David Hedrick, was called by the proponents of the will, and the evidence given by him, which the Circuit Court was asked to exclude from the jury, was in support of the will and directly opposed to his own interests.

In the case of *McMechen* v. *McMechen*, 17 W. Va. 692, this Court holds, that under the statute a witness is not prevented from giving evidence against his own interest, because there can be no inducement to a witness to swear falsely, to prevent which and its consequences to other parties is the object of the statute. Again, when the statute speaks of transactions or communication had personally with a deceased person, can it be that such a transaction as the attestation of a will was contemplated, or must it not be such a transaction or communication, as the witness would derive some advantage or benefit from, some transaction or communication, in reference to which the testimony of the witness would confer on him an advantage pecuniary or otherwise over the estate of the deceased, which could not be obtained if said decedent was in life, and had an opportunity to be heard in contradiction of the testimony?

David Hedrick's testimony is as follows: "I signed that will at my brother John's request, and George Raynes signed at the same time at the request of my brother, and we were all three present at the time each signed." * * * * "That said testator, just before he signed the will, read it over, and said that it was just as he wanted it." I do not think, this testimony disclosed any such transaction or communication, as was contemplated by the statute to disqualify the witness. So far from the evidence conferring any advantage in his favor against the estate of John Hedrick, but for this will witness would have inherited one fourth of the estate, and under the directions of the will he gets nothing. And the other evidence in the cause shows, that the provisions of the will are in accordance with the previous declared intentions of the testator, which would indicate, that he would have no disposition to contradict the testimony of said David Hedrick, if he was in life, and had an opportunity to do so.

In the case of *McMechen* v. *McMechen*, 17 W. Va. 692, the court uses the following language: "Mrs. McMechen declining to renounce the will, moving for the appointment of an administrator with the will annexed, and the will itself providing so liberally for her, as the evidence shows, convinces my mind, that it was her individual interest to have the will sustained; her evidence therefore was not in her own behalf

but against her interest. It is no answer to say, that her evidence was in favor of her children. That is not prohibited by the statute but expressly allowed, notwithstanding the witness may be interested in the suit."

In this case David Hedrick in testifying in opposition to his own interest seems to have been testifying in behalf of his children, which he had a perfect right to do.

The competency of Ann Hedrick, the wife of David Hedrick, is also brought in question by the third assignment of error. It appears from her evidence, that she was the second wife of said David Hedrick and had no children. She it was who drew the will for said John Hedrick on the 27th or 28th of April, 1885, at his request, and in his presence; and after she had written it, he said it was just what he wanted; that said will so written by her was the one taken by her husband to Mr. Spotts to be copied, and, when so copied, was afterwards signed by said John Hedrick. She states that she and her husband went to said John Hedrick's on the 5th of June, and that she remained there until the evening of the 6th; that she was there at the time the will was made, but was not in the room or present, when it was signed; that said John Hedrick's mind was as clear on the 6th day of June as it ever was, and that he was as capable of making a will on that day as he ever was. The reason assigned for excluding her testimony is that she is the wife of David Hedrick, and that, if he is incompetent, she must be also. This witness is not interested in the establishment of the will because neither she nor her husband are devised anything by the will. She is a step-mother to some of the devisees, and, so far as her testimony might be swayed by her interest, it would be natural to expect her inclinations would be against the establishment of the will. I can see no legal objection to the evidence detailed by either David Hedrick or his wife.

The will of said John Hedrick is attacked by the plaintiffs, because it was not written by him or signed and acknowledged by him in the manner prescribed by law, or in such manner as to make the paper-writing his will; and on the ground of alleged mental incapacity at the time said paper was signed by him; and on the further ground that,

if he ever gave any sort of assent to the provisions of said paper, it was through the procurement and by undue influence of the defendant, David Hedrick and his wife.

As to the first ground of objection to the will the Code c. 77, s. 3 provides: "No will shall be valid, unless it be in writing and signed by the testator or some other person in his presence and by his direction, in such manner as to make it manifest, that the name is intended as a signature."

In the case of *Webb* v. *Dye,* 18 W. Va. 376, the court holds that a will must be subscribed by two attesting witnesses, but need not be proven by both of them; and although the witness Raynes was absent and did not appear to testify before the jury in this case, yet David Hedrick swears positively, that he signed that will at his brother John's request and in his presence and in the presence of said Raynes; that they were all three present at the time each signed; that when said Raynes went to sign the will as a witness, he said he thought he ought to know what was in the paper before he signed it, and John Hedrick said, "that is none of your business."

In the case of *Webb* v. *Dye, supra,* Judge JOHNSON in his opinion collates the authorities, citing several from Virginia and from other states bearing upon the question of the proper execution of a will, and among others the case of *Cheatham* v. *Hatcher,* 30 Gratt. 56, holding that a will must be subscribed, but need not be proven by two attesting witnesses. Also, *Jessee* v. *Parker's Adm'rs,* 6 Gratt. 57. In that case, it seems, one Dr. Tully wrote the will signed the name of the testator to it and also signed the names of himself, Jane Sanderson and Sallie C. Southall, as attesting witnesses to the will. Upon an issue of *devisavit vel non* the jury found in favor of the will. There was a motion to set aside the verdict and grant a new trial, which was overruled in the court below. ALLEN, J., speaking for the whole court, said: "The court is of opinion, that, as the jury were the proper judges of the weight and credit due to the testimony of the witnesses, the verdict in favor of the will sanctioned by the opinion of the court, before which a trial of the issue was had, has concluded all mere questions of fact depending upon the credit to be given to the witnesses.

The court is therefore of opinion, that upon this record it must be taken, that all the requirements of the statute in order to establish a will were satisfactorially proved." In the case of *Dudleys* v. *Dudleys*, 3 Leigh. 436, it appeared, that upon a question of probate the testimony of one of the attesting witnesses was contradicted by another. The County and Circuit Courts both gave credit to the witness for the will. On appeal from the sentence of probate it was held, that the Court of Appeals on a mere question of credibility of witnesses will always presume, that the inferior courts, which saw and heard the witnesses examined, decided correctly.

Upon the question as to the mental capacity of said John Hedrick on the 6th day of June, 1885, to make a valid will, we have the testimony of Mrs. Ann Hedrick, who says, she drew the will at the request of said John Hedrick and in his presence, who said it was just what he wanted; that the will written by her was the one her husband took to Mr. Spotts, to be copied, and, after being so copied by Spotts, is the one in contest; that she was not in the room, when the will was signed, but that said John Hedrick's mind was as clear on the 6th of June, as it ever was, and he was as capable of making a will on that day, as he ever was. This witness was not a party to this suit; neither would she inherit anything, if the will should be held to be invalid.

Dr. J. B. Spicer, a witness for the contestees, stated, that he knew said John Hedrick since 1873; saw him on June 2, 1885; called to see him professionally; that said Hedrick knew him as soon as he saw him; that he found said Hedrick suffering from diseased liver, want of appetite, a bronchial affection and weakness; that his mind was as clear, as he ever saw it; that he conversed rationally and was in the opinion of witness as competent to make a will, as he ever was in his life; that he saw him again on the 19th of June, 1885, and found him more feeble in body but entirely in his right mind and competent to make a will; saw him again on the 23d of June, when he was still more weak in body, but had mind enough to make a will, *etc.*

Austen Handley was sworn for the contestees and stated, that he had known John Hedrick all his life; was at his

house in the middle of May, 1885, and talked with him a half hour; that he was entirely rational, understood what he was talking about and from conversation, conduct, manner and appearance witness thought him competent to make a will; thought his mind as clear, as he had ever seen it.

David Tuckwiler, a witness for contestees, testified, that he had known John Hedrick all his life; saw him in the month of April, 1885; made a contract with him to graze some cattle; saw him again about the 20th of June; talked with him some little time; that said Hedrick talked rationally; said, if he (witness) would leave his cattle there until fall, they would get fat; witness had already spoken of taking them away; asked him how much he owed him for grazing said cattle, and he replied, $12.00, which was the correct amount due him for the grazing; that he was capable of mental exertion, and in the opinion of witness was competent at that time to make a will.

Contestees had Rev. A. M. Chappel sworn, who testified, that about the 20th of June, 1885, he conversed with John Hedrick about spiritual matters; that said Hedrick conversed rationally, knew what he was talking about; saw him again about a week before he died; that said Hedrick was sane at both times he saw him.

W. Anderson also testified, that he saw John Hedrick in May, and made a contract with him to keep some cattle for him; that he went back on the 14th of June to settle with him for the pasturage of the cattle; talked with him for some little time; he talked rationally, understood what he was doing and talking about; that he settled with him for the pasturage and paid him the money due him; that he considered him on both occasions capable of making a will.

John Leedy also testified, that he was at John Hedrick's house on the 8th of June; was with him two hours; saw nothing wrong with his mind and from his conversation and manner thought him competent to make a will.

William Flack testified, that he saw John Hedrick on the 3d or 4th of June, 1885; was with him some time; they walked up to the barn; the said Hedrick told him, that David Coffman, the plaintiff, should never have any of his property; that, before he should have a cent of his property, he

would give it to charitable purposes; that he saw nothing wrong with his mind, that he talked rationally, and from all witness saw of him he thought him capable of making a will, —as much so as ever he was.

A considerable amount of testimony was introduced before the jury by the contestants, some of which was conflicting with the foregoing testimony. But in the case of *Dower* v. *Church*, 21 W. Va. 63, this Court holds, that "in trying this particular issue of *devisavit vel non* the rule, which governs a common-law court, prevails in granting new trials, and that rule is, that in reviewing the action of the court below, when the evidence is all parol evidence, and it is conflicting, the appellate court will reject all the evidence of the exceptor which is in conflict with the other party; and upon the evidence of the appellee giving it full force and effect, and that of the appellant not in conflict with it, if the case is in favor of the appellee, the verdict of the jury, and the decree based upon it, will be approved and affirmed;" referring to *Lamberts* v. *Cooper's Ex'r*, 29 Gratt. 61; *Webb* v. *Dye*, 18 W. Va. 376; *Nicholas* v. *Kershner*, 20 W. Va. 251, and many others.

The contestants in their bill allege, "that, if ever said John Hedrick gave any sort of assent to the provisions of said pretended will, it was through the procurement and by the undue influence of the defendant David Hedrick and his wife." In regard to undue influence we find it stated in 1 Jarm. Wills, 133, that the influence to vitiate an act must be such as to amount to force and coercion, destroying free agency, and there must be proof, that the act was obtained by this coercion; referring to *Gardiner* v. *Gardiner*, 34 N. Y. 155, and *Gaither* v. *Gaither*, 20 Ga. 709. Also: "In order to set aside the will of a person of sound mind, it must be shown, that the circumstances of its execution are inconsistent with any hypothesis but undue influence, which can not be presumed but must be shown and in connection with the will and not with other things;" referring to *Brick* v. *Brick*, 66 N. Y. 144; *Eckert* v. *Flowry*, 43 Pa. St. 46, and numerous other authorities. It is also held in the case of *McMechen* v. *McMechen*, 17 W. Va. 701, that "the burden of proof of fraud or undue influence exercised to induce a testator to execute

a will is on him who alleges it; it is not on the propounder of the will."

In the case under consideration however the contestants of the will have introduced no testimony which tends to prove, that undue influence was exercised by David Hedrick or any other person towards or over said John Hedrick, to control the disposition of the property mentioned in his will; and, this being the case, as a matter of course fraud or undue influence can not be considered in determining the issue of *devisavit vel non*, as fraud or undue influence will not be inferred. The law recognizes the sovereign right of every man to dispose of his property, as to him may seem best, and when it has been disposed of by a man of sufficient mental capacity to make a will and without any undue influence or fraud practiced upon him, no matter how unreasonable or unjust the disposition may seem to others, a sufficent answer to all objections is found in the fact, that such is his will and the disposition therein made conforms to his wishes.

Upon examination of the instructions given to the jury on motion of the contestees, comparing them carefully with the law and considering them in connection with the evidence introduced upon the trial, they seem to me to propound correctly the law applicable to the testimony, and the Circuit Court did not err in giving them to the jury.

It is, however, assigned as error in this cause, that the court below corrected the second instruction asked for by the contestants by striking out the words "jealous eye," and inserting "careful scrutiny;" but the words taken in connection with the language used in the instruction are so nearly synonymous, that either expression might have been used without creating a different impression on the minds of the jury. I do not therefore regard the correction as material. See *Cheatham* v. *Hatcher*, 30 Gratt. 56; sixth point of syllabus.

The appellants also assign as error the refusal of the court below to give the instructions asked for by them, numbered from 3 to 19, inclusive. On examining these instructions, however, it will be found that instructions Nos. 3, 4, 5, 7, 8, 10, 11, 12, 14, 15, 16, refer directly to the question of undue

influence; several of said instructions stating how and when undue influence upon the mind and actions of a testator may be inferred; and, as we have seen above, the burden of proof of fraud or undue influence exercised to induce a testator to execute a will is on him, who alleges it; and it can not be presumed but must be shown. And, as there appears to be no evidence of undue influence in this case, I must regard said instructions as irrelevant, and calculated to mislead the jury, and that they were properly refused. As to instructions numbered 6, 9, 13, 17, 18, and 19 I am of opinion, that the court below committed no error in rejecting the sixth instruction, because there must be clear evidence of a disposing mind at the time the will was made, whether the dispositions of the will are equal or unequal, as the court told the jury in instruction 1; and, as to instructions 9, 13, 17, 18, and 19, the court below acted properly in excluding them, because they are predicated upon a statement of facts, which is not borne out by the testimony in the cause, and are calculated to mislead the jury. I am inclined to think the fourth instruction given by the court, to wit, "that the propounders of the will must prove that John Hedrick executed the will as his own voluntary act free from the fraud, coercion or undue influence of those about him," does not propound correctly the law, as the burden of proof on those points rests upon the contestants; but this error is not one, of which the appellants can complain.

Upon the case presented by the entire record I am of opinion, that the court below did not err in overruling the plaintiff's motion to set aside the verdict rendered by the jury upon the trial of the issue directed in this cause and grant them a new trial; and the decree rendered upon said verdict must be affirmed, with costs to the appellees.

AFFIRMED.