## CHARLESTON.

CARPENTER *v.* HAYHURST *et als.*

Submitted June 11, 1912.   Decided October 7, 1913.

WILLS—*Action—Sufficiency of Evidence.*

> On the trial of an issue *devisavit vel non*, the only evidence in relation to the due execution of the will is the testimony of the two subscribing witnesses, both of whom prove the competency of the testator, and one of whom testifies that he wrote the will at testator's request and read it to him; that the other subscribing witness, who lived near by, was then sent for and came; that the three were present together in the room when testator and the two witnesses signed the paper. The other witness admits that he was called in to witness the will; that all three of them were together in the room; that a portion of the will was read to him and that he signed it as a witness in the presence of the testator and the other witness; but he denies that he saw the testator or the other witness sign it, or that he saw their names on the paper at the time he signed it. *Held:* That the verdict of the jury, which was against the validity of the will, was not supported by the evidence, and the court properly set it aside.

Appeal from Circuit Court, Marion County.

Suit in equity by Sarah Jane Carpenter against David Hayhurst and others. From judgment for defendants, plaintiff appeals.

*Affirmed.*

*Harry Shaw,* for appellant.

*Showalter & Frame* and *M. W. Ogden,* for appellees.

WILLIAMS, JUDGE:

Sarah Jane Carpenter brought a suit in equity against Rebecca Hayhurst and David Hayhurst, in his own right and as executor of William Hayhurst, deceased, attacking the will of said William Hayhurst, deceased. The chancellor directed an issue *devisavit vel non* to be tried by a jury. The trial of that issue resulted in a finding by the jury that the paper writing offered as the will of William Hayhurst, deceased, was not his will. On motion of David Hayhurst, the court set aside the verdict of the jury and awarded a new trial. To that order Mrs. Carpenter obtained this writ of error.

Testator left a widow, Rebecca Hayhurst, and two children, David Hayhurst and the plaintiff, Sarah Jane Carpenter. The will in question gives the wife the household goods absolutely, and a life estate in all of testator's other personal property and in his lands, and at her death the remainder in the lands to his son David Hayhurst, who is named as his executor; and the remainder in the personal property, subject to the payment of debts, to his daughter, Sarah Jane Carpenter.

The only question presented is: Did the court err in setting aside the verdict? The decision of this question calls for a consideration of the evidence.

The only witnesses who testified concerning the capacity of the testator and the facts and circumstances attending the execution of the will, were T. H. Devault and R. B. Travis, whose names appear as subscribing witnesses thereto. Notwithstanding the bill attacks the will on the ground of testator's alleged incapacity and of undue influence exerted upon him by his son, David Hayhurst, there is no attempt to prove either of these allegations. On the contrary, both of the attesting witnesses say that on the day the will purports to have been executed he was of sound mind. The testimony of the two witnesses conflict in many particulars, and counsel for Mrs. Carpenter insists that Travis contradicts Devault, and that his testimony proves that the requisite formalities for the due execution of the will were not observed; that the jury were the sole judges of the credibility of the witnesses, and had the right to disbelieve Devault and believe Travis. But we do not understand the testimony

of Travis to be a denial of the material facts testified to by
Devault. True it does not corroborate Devault in the most im-
portant particulars, and contradicts him on some immaterial
matters, still it does not disprove that the testator signed the
will in the presence of the two subscribing witnesses, and that
they signed it in his presence and in the presence of each other.
Giving Travis's testimony full force and value, it only proves
that he did not know, or does not remember, whether it was so
signed and witnessed or not. Witness Devault is very clear and
positive in his statements. He says he went to testator's house
at his request, made some days or weeks before, and wrote
the will as the testator had directed him, and then read it over to
him; that, before testator signed it, Mr. Travis was sent for
and came to the house; that they were all three present in the
room when he, at testator's request, signed his name for him,
he never having learned to write, and then assisted him to make
his mark; that he then signed his name as a subscribing wit-
ness, and Mr. Travis immediately signed his name also as a sub-
scribing witness; that they were all three present in the room
at the signing and witnessing of the paper. The foregoing
summary of Devault's testimony proves that all the legal re-
quirements were observed in the making of the will, and calls
for a verdict in favor of its validity, unless those material facts
are contradicted by Travis. Travis lived about a quarter of
a mile from testator's house, and admits that he was sent
for and came to witness his will; that when he arrived testator
and witness Devault were in the room; and that Devault had
already written the paper. He also admits signing the paper
as a witness, in the presence of Devault and the testator. He
first says that Devault asked him to witness the will; but, on fur-
ther questioning, says he does not remember whether it was
testator or Devault who asked him to witness it, but it is not
material who made the request. *Freeman* v. *Freeman*, 71 W.
Va. 303, 76 S. E. 657; 40 Cyc. 1115. Being asked, "Who all
signed the will?" he replied, "I do not know." He was then
asked, "Who all did you see sign?", and replied, "I saw myself
sign." He says he did not see Devault sign and did not see
his name on the paper when he signed it himself; but, in answer
to the very next question, he says he does not know whether

he signed it first or last.   He was asked whether he was looking out of the window when Devault assisted Hayhurst to make his mark, and replied, "I don't remember which way I was looking." He does not know whether he was in the room at the time it was done, but he does not say that it was not done in his presence.   He may have been wilfully unobservant, but his failure to see, when he was present and could have seen, does not amount to a contradiction of Devault who says the act was done in the presence of the three.   It being proven that all three were in the room together and that witness could have seen what was done by testator and the other subscribing witness, it is immaterial that he did not avail himself of the opportunity to see.   40 Cyc. 1123, and numerous cases cited in note.   Moreover, this court has held that the testimony of a subscribing witness who seeks to impeach a will should be viewed with a great deal of suspicion.   *Webb* v. *Dye,* 18 W. Va. 376, and *Ward* v. *Brown,* 53 W. Va. 227.

In view of the uncertain testimony of Travis, which does not deny the material facts proven by Devault, and which evinces both his lack of knowledge and memory as to what took place, and of the direct and positive testimony of witness Devault who proves the due execution of the will, the jury had no right to find that the will had not been duly executed Their verdict was clearly against the evidence, and the court very properly set it aside.   The judgment will be affirmed and the cause remanded for further proceedings.

*Affirmed.*